<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK MCMAHON, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 11-2306 (SRC) |
| v. : | |
| : | OPINION |
| UNIVERSITY OF MEDICINE and : | |
| DENTISTRY OF NEW JERSEY and : | |
| SUSAN S. SALMOND, DEAN OF THE : | |
| UNIVERSITY OF MEDICINE AND : | |
| DENTISTRY OF NEW JERSEY SCHOOL : | |
| OF NURSING, : | |
| : | |
| Defendants. : | |

<u>CHESLER</u>, District Judge

This matter comes before the Court on the motion by Defendants University of Medicine & Dentistry of New Jersey and Susan W. Salmond, Dean of the University's School of Nursing (collectively, "UMDNJ" or "Defendants") to dismiss the Eighth and Ninth Counts of the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(c) [docket entry 10]. Plaintiff Patrick McMahon ("Plaintiff") has opposed the motion. The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, Defendants' motion will be granted.

I.   BACKGROUND

This action arises from Plaintiff's dismissal from UMDNJ's School of Nursing's Certified Registered Nurse Anesthesia ("CRNA") program. Plaintiff alleges that he was

dismissed from the CRNA program in spite of his compliance with the academic policies in place at the time of his matriculation. Plaintiff further alleges that he was harassed and discriminated against by Defendants because of his service in the United States Armed Forces.

Plaintiff served as a decorated member of the United States Air Force from 1979 until June of 2010. Plaintiff has a Bachelor of Science degree in chemistry, and a Master of Science degree in biomedical engineering. In 1998, Plaintiff became a registered nurse, and from July 1999 to June, 2010, served as a Captain on both Active Duty and Reserve with the Air Force, stationed in Niagara Falls, New York. Plaintiff also worked in the field of pharmaceutical research and development, as an ICU nurse, and as a liver transplant coordinator. During his tenure with the Air Force in Niagara Falls, Plaintiff served in various positions utilizing both his medical and military experience.

In December of 2008, Plaintiff obtained an additional Master of Science Degree as an Adult Nurse Practitioner. While still enrolled in that program, in the Spring of 2007, Plaintiff matriculated in UMDNJ's CRNA Program, which was to commence in September of 2007, and conclude in 2009, with Plaintiff obtaining a third Master of Science degree as a Nurse Anesthetist. Plaintiff was midway through his course-work for the CRNA program in June of 2010 when he obtained a formal release from the Air Force, and applied to the United States Army for acceptance into the Army Certified Registered Nurse Anesthetist, Specialized Training Assistance Program ("CRNA-STRAP"). The CRNA-STRAP required Plaintiff to make a four-year commitment to the Army, to commence following his graduation as a Nurse Anesthetist, in consideration for a $3,000 monthly stipend, and repayment of $80,000 of Plaintiff's student loans. Moreover, Plaintiff's class and clinical time in the UMDNJ CRNA Program "would be credited towards Plaintiff's rank, promotion, retirement and pay in the Army upon graduation."

(2nd Am. Compl. ¶ 19.)  According to Plaintiff, he was informed on July 16, 2010 that he would be accepted into the CRNA-STRAP program as soon as the Army received a letter confirming Plaintiff's status as a student in the School of Nursing's CRNA program.

On July 16, 2010, Defendants informed Plaintiff that he was dismissed from the CRNA program due to his receiving a grade of "C" in his Pediatric Anesthesia course.  Plaintiff appealed his dismissal to the UMDNJ's School of Nursing's Student Affairs Committee, which unanimously recommended to Defendant Dean Salmond that Plaintiff's grade of "C" should be upheld, that he had "exceeded the number of permissible failing grades," pursuant to the School of Nursing's Academic Policies, and that he should be dismissed.  (2nd Am. Compl., Ex. B.)  Plaintiff disputed the Committee's recommendations, and met with the Dean on September 9, 2010.  According to Plaintiff, the Dean informed him that she would consider his appeal and notify him of her decision; she did not ask for Plaintiff's student identification card, or advise him that he was not permitted to attend classes while his appeal was under consideration.  When Plaintiff arrived for class on September 13, 2010, he was detained by UMDNJ campus security, but allowed to proceed to his 7:00 a.m. class.  However, before the class commenced, "two UMDNJ Campus Security staff entered, accused Plaintiff of trespassing and under threat of force escorted Plaintiff from the building."  (2nd Am. Compl. ¶ 32.)  Later in the same day, Defendant Dean Salmond emailed Plaintiff a letter in which she rejected his appeal, and adopted the Student Affairs Committee's recommendations.

Plaintiff alleges, in the first six contract-based counts of his Complaint, that Defendants dismissed him from the CRNA program in violation of the UMDNJ's School of Nursing Nurse Anesthesia Program's Policy and Procedure Manual for Graduation Requirements and "Academic Policy," UMDNJ School of Nursing's 2005-2007 Course Catalog and Student

Handbook, and Section VII, paragraph K of UMDNJ's Satisfactory Academic Progress Policy. (2nd Am. Compl. ¶ 34.) Specifically, Plaintiff alleges that these policies, as of his matriculation, required him to maintain a cumulative GPA of 3.0 or above, and a course average of "C" or better in his CRNA course-work, and that the Standards for Satisfactory Academic Progress were "applicable for the duration of the student's continuous matriculation in the same program, despite any changes in standards that may apply to newer matriculants." (2nd Am. Compl. ¶ 16, Ex. D.) Plaintiff alleges that Defendants' ostensible dismissal of Plaintiff on the basis of his failure to maintain a "B" average in his CRNA course-work, Plaintiff having received a grade of "C" in his Pediatric Anesthesia course, was pursuant to a policy change enacted after his matriculation, and thus could not form a justifiable basis for his dismissal.

Moreover, in Counts Eight and Nine of the Complaint, Plaintiff alleges that Defendants harassed and discriminated against him throughout his enrollment in the CRNA program, on the basis of Plaintiff's service in the United States Armed Forces, in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq.* In support of these allegations, Plaintiff cites Defendants' alleged attempts to deny or interfere with Plaintiff's rights under N.J.S.A. 18A:62-4.2 and 4.3 (providing re-enrollment and other rights to members of a Reserve component of the Armed Forces who are unable to complete a course at a New Jersey institute of higher education due to a call to active duty) and 34 C.F.R. § 668.18 (regulations requiring that an institution not deny readmission to a student who is a member of the uniformed services on the basis of that membership), and Defendants' requirement that Plaintiff participate in a psychological evaluation as a condition of his continued matriculation. (2nd Am. Compl. ¶ 79.) Plaintiff asserts that he submitted repeated written and oral complaints regarding Defendants' "unlawful harassment and discrimination against him in violation of the LAD," and that

Defendants "subjected Plaintiff to reprisals" because of his complaints. (2nd Am. Compl. ¶¶ 83-84.)

The Court notes that Plaintiff's Complaint was originally filed in the Superior Court of New Jersey, Chancery Division, Essex County. On October 20, 2010, the Chancery Division Judge denied Plaintiff's application for temporary restraints, holding that Plaintiff had not shown a likelihood of immediate and irreparable harm. (Aff. of Sean R. Kelly, Ex. B at 79.) On April 27, 2011, Defendants filed a Notice of Removal. Defendants then filed the instant motion for judgment on the pleadings as to Plaintiff's discrimination claims (Counts Eight and Nine), pursuant to Fed.R.Civ.P. 12(c).

## II.  LEGAL ANALYSIS

### A.  Standard of Review

Rule 12(c) permits a party to move for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial." Fed.R.Civ.P. 12(c). Though procedurally it applies later in a case than a Rule 12(b) motion, which may be filed in lieu of a responsive pleading, a motion brought under 12(c) for failure to state a claim upon which relief may be granted is governed by the same standard applicable to Rule 12(b)(6) motions. *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims have facial plausibility. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). This means that the Complaint must contain sufficient factual allegations to raise a right to relief above the speculative level, assuming the factual allegations are true. *Id.* at 1965; *Phillips v.*

*County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  The Supreme Court has made clear that "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 127 S.Ct. at 1964-65; *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims."  *Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1420 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The Court will apply this standard in evaluating whether Plaintiff may proceed with his discrimination claims.

B.  Discussion

The New Jersey LAD contains a series of provisions defining unlawful discrimination, which are to be liberally construed "to accomplish the Legislature's overriding goal of eliminating invidious discrimination."  N.J. STAT. ANN. § 10:5-3.  Section 10:5-12(f) of the LAD states, in relevant part, that it shall be unlawful discrimination:

> For any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof...to any person on account of the race, creed, color, national origin, ancestry, marital status, civil union status, domestic partnership status, sex, gender identity or expression, affectional or sexual orientation, disability or nationality of such person...

Section 10:5-12(l) provides, in relevant part, that it shall be unlawful:

> For any person to refuse to buy from, sell to, lease from or to, license, contract with, or trade with, provide goods and services or information to, or otherwise do business with any other person on the basis of the race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or sexual orientation, marital status, civil union status, domestic partnership status, liability for service in the Armed Forces of the United States, disability, national or source of lawful income used for rental or mortgage payments of such other person or of such other person's spouse, partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers or customers.

N.J.S.A. 10:5-12(d) provides, in relevant part, that it shall be unlawful:

> For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of...any right granted or protected by this act.

N.J.S.A. 10:5-5(l) defines "[a] place of public accommodation" to include colleges and universities. N.J.S.A. 10:5-5(a) defines a "person" to include "one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and fiduciaries."

Defendants argue that Plaintiff's discrimination claims against them cannot survive, because the LAD does not provide a cause of action against a "place of public accommodation" for discrimination against a person on account of his liability for service in the Armed Forces.[1] Defendants explain that the New Jersey Legislature deliberately included liability for service in

---

[1] The parties do not dispute that Plaintiff was, during the relevant period, "[liable] for service in the Armed Forces of the United States," which is statutorily defined as being "subject to being ordered as an individual or member of an organized unit into active service in the Armed Forces of the United States by reason of membership in the National Guard, naval militia or a reserve component of the Armed Forces of the United States, or subject to being inducted into such armed forces through a system of national selective service." N.J. STAT. ANN. 10:5-5(g).

the military as a protected class in N.J.S.A. 10:5-12(l), the "goods and services" subsection of the statute, and in the subsection applicable to discrimination in the workplace, N.J.S.A. 10:5-12(a). By contrast, the New Jersey Legislature deliberately did not list liability for service in the Armed Forces as a protected class in N.J.S.A. 10:5-12(f), the "public accommodation" subsection, applicable to the relationship between a student and university. Furthermore, even if the University were considered a "person" under the goods and services subsection of the statute, Defendants maintain that it applies only to refusals to deal or do business with persons because of a protected characteristic, citing *Rubin v. Chilton*, 359 N.J. Super. 105, 110, 819 A.2d 22 (N.J. Super. Ct. App. Div. 2003). Defendants conclude that the university-student relationship does not involve any type of "business relationship or dealings," and thus the goods and services subsection is inapplicable to Plaintiff's claims, leaving him with no cause of action under the LAD.

The Court finds Defendants' reading of the New Jersey LAD to be unduly narrow. The LAD is remedial legislation, "which should be liberally construed to advance its beneficial purposes." *Panetteiri v. C.V. Hill Refrigeration*, 159 N.J. Super. 472, 483, 388 A.2d 630 (N.J. Super. Ct. App. Div. 1978). Indeed, the New Jersey Supreme Court has described the purpose of the LAD as "nothing less than the eradication of the cancer of discrimination." *Fuchilla v. Layman*, 109 N.J. 319, 334, 537 A.2d 652 (1988) (citing *Jackson v. Concord Co.*, 54 N.J. 113, 124, 253 A.2d 793 (1969)). The Court agrees that liability for service in the Armed Forces is not a protected class under the public accommodation subsection, N.J.S.A. 10:5-12(f). However, while the New Jersey Supreme Court has not passed upon the applicability of the goods and services subsection, N.J.S.A. 10:5-12(l), to universities, "person" is defined in N.J.S.A. 10:5-5(a) as including "associations" and "organizations," without qualification. The Court is hard-pressed

to understand why a public university – a form of nonprofit organization – would not be considered a "person" under this definition.  *See Rubin v. Chilton, supra*, 359 N.J. Super. at 110. 819 A.2d 22 (holding that, "[a]bsent a clear indication to the contrary, language in a statute is to be read in accordance with its plain and ordinary meaning) (citing *DiProspero v. Penn*, 183 N.J. 477, 492, 874 A.2d 1039 (2005)).  Moreover, the New Jersey Superior Court, Appellate Division has held that a hospital may be held liable for violation of the goods and services subsection, N.J.S.A. 10:5-12(l), *see Rubin, supra*, at 110, 819 A.2d 22, indicating that a hospital, though it constitutes a "place of public accommodation," is also a "person" for the purposes of the goods and services subsection.  Thus, the Court concludes that a university is a "person" within the meaning of N.J.S.A. 10:5-5(a) and 12(l).

As to whether the goods and services subsection applies to the university-student relationship, N.J.S.A. 10:5-12(l) renders it unlawful for any person to "refuse to...provide services or information to, or otherwise do business with any person" on the basis of the enumerated characteristics.  On a plain reading of this statutory language, it forbids a university from refusing to provide educational services to a student on the basis of those characteristics. Though the New Jersey Supreme Court has not addressed whether the relationship between student and university is contractual, the Appellate Division has held that the relationship between university and student is one which generally has contractual aspects, since the student comes to a university to be educated, and pays tuition for that service.  *See Mittra v. University of Medicine and Dentistry of New Jersey*, 316 N.J. Super. 83, 89, 719 A.2d 693 (N.J. Sup. Ct. App. Div. 1998) (citing *Napolitano v. Trustees of Princeton Univ.*, 186 N.J. Super. 548, 453 A.2d 263 (N.J. Sup. Ct. App. Div. 1982)).  In *Mittra*, where a UMDNJ student claimed that the university had breached the implied warranty created by the student handbook, the Appellate Division

rejected the rigid application of contractual principles to university-student conflicts involving academic performance, limiting its scope of review "to a determination whether the procedures followed were in accordance with the institution's rules and regulations," but noting that "courts may intervene where the institution violates in some way its rules and regulations pertaining to student dismissals." *Id.* at 90. Since Plaintiff's Complaint alleges that UMDNJ dismissed him in violation of its own academic policies, his allegations fall within the category of claims that New Jersey courts have recognized to state a cause of action sounding in contract, at least for the purposes of the LAD.[2]

Moreover, the New Jersey Superior Court, Appellate Division has held that the good and services subsection prohibits the discriminatory termination of a contract. *J.T.'s Tire Service, Inc. v. United Rentals N. America, Inc.*, 411 N.J. Super. 236, 242, 985 A.2d 211 (2010) (holding, with "no hesitation," that quid pro quo sexual harassment of an independent contractor would violate the goods and services subsection of the LAD) (citing *Rubin, supra*, at 110, 819 A.2d 22 (holding that a hospital's discriminatory refusal to continue doing business with independent contractors on the basis of age would constitute a violation of the goods and services subsection of the LAD)).[3] Thus, UMDNJ's discriminatory dismissal of a student from the CRNA program would constitute a violation of the goods and services subsection of the LAD.

---

[2] Notably, the United States Supreme Court has held that a contract for educational services is a contract for the purposes of the federal civil rights statute prohibiting racially discriminatory refusals to deal, 42 U.S.C. § 1981. *See Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (citing *Runyon v. McCrary*, 427 U.S. 160, 172, 49 L. Ed. 2d 415, 96 S. Ct. 2586 (1976)).

[3] Federal courts in this Circuit have also interpreted the federal civil rights statute forbidding discriminatory refusals to deal, 42 U.S.C. § 1981, to provide a cause of action for discriminatory dismissal from a university. *See, e.g., Manning v. Temple University*, 2004 U.S. Dist. LEXIS 26129, *14-15 (E.D. Pa. Dec. 30, 2004) (granting summary judgment in favor of the defendants, but acknowledging that plaintiff had stated claim for discriminatory dismissal from her medical school program).

However, Plaintiff's Complaint does not allege colorable facts in support of his claim that Defendants dismissed him from the CERNA program because of his liability for service in the Armed Forces, and thus does not meet the pleading standard set forth in *Twombly*. *Supra*, 127 S.Ct. at1965. The mere legal conclusion that Plaintiff was "harassed" prior to his dismissal, and his inclusion of a smattering of examples, most of which are also conclusory (i.e., "Defendants violated, interfered with and/or attempted to deny Plaintiff's rights, as a member of the uniformed services, for prompt readmission with the same academic status and academic standing...") are insufficient to support a nexus between Plaintiff's dismissal from the CRNA program, and his military status. *See Iqbal*, *supra*, 129 S.Ct. at 1950. Indeed, taking as true Plaintiff's allegations that his dismissal from the CRNA program breached an implied contract created by the Defendants' prior academic policy, breach of contract does not, without more, suggest discrimination. Furthermore, the goods and services subsection of the LAD protects individuals from discriminatory refusals to deal – it does not address hostile work or educational environments.[4] Thus, a claim of mere harassment by the Defendants during Plaintiff's studies at UMDNJ would not violate the goods and services subsection of the LAD. Finally, for the foregoing reasons, Plaintiff does not plead sufficient facts in support of his retaliation claim. N.J.S.A. 10:5-12(d) addresses reprisals for complaints of practices or actions forbidden by the LAD, or reprisals which threaten the exercise or enjoyment of rights protected by the LAD.

---

[4] In *J.T.'s Tire Service*, the New Jersey Appellate Division held that quid pro quo sexual harassment of an independent contractor violates the goods and services subsection of the LAD, because it creates a discriminatory condition in the business relationship. *Supra*, 411 N.J. Super. at 242, 985 A.2d 211 (2010). In this case, Plaintiff has not plead sufficient facts to support a claim that he was discriminated against in the conditions of his educational enrollment at UMDNJ. Though Plaintiff claims that Defendants required him to undergo a psychological evaluation as a condition of his continued matriculation, Plaintiff does not indicate why this requirement was discriminatory.

Plaintiff has failed to adequately assert conduct violative of his rights under the LAD, and thus he cannot support a claim that Defendants retaliated against him for his complaints of discriminatory conduct.

As such, Counts Eight and Nine of Plaintiff's Complaint are dismissed without prejudice.

### III.   CONCLUSION

**For the foregoing reasons, the Court grants Defendants' motion for judgment on the pleadings as to Counts Eight and Nine of Plaintiff's Complaint.  An appropriate form of Order will be filed together with this Opinion.**

　　　　　　　　　　　　　　　　　　　　   s/ Stanley R. Chesler    
　　　　　　　　　　　　　　　　　　　　**STANLEY R. CHESLER**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**

**DATED: October 26, 2011**